In the Matter of the Application for the DISCIPLINE OF Paul V. FLING, an Attorney at Law of the State of Minnesota.

No. 51812.

Supreme Court of Minnesota.

March 5, 1982.

Michael J. Hoover, Director of Lawyers Professional Responsibility Bd., and Richard Harden, Atty., Lawyers Professional Responsibility Bd., St. Paul, for appellant.

Fred Allen, Minneapolis, for respondent.

PER CURIAM.

The Lawyers Professional Responsibility Board filed a complaint against respondent,

Paul V. Fling, an attorney admitted to practice in this state, which charged him with several violations of the Code of Professional Responsibility. This court appointed the Honorable Ben F. Grussendorf, a retired district court judge, to act as referee and hear the petition for discipline. A hearing was held on May 19–21, 1981.

Referee Grussendorf found that respondent repeatedly and intentionally converted the funds of three clients, failed to maintain adequate books and records, failed to provide an accounting to a client after several requests to do so, neglected to expeditiously and properly handle two domestic matters, made direct contact with a party known to be represented by counsel, and failed to return a client her file after being requested to do so. The referee concluded the Board had failed to establish by clear and convincing evidence that respondent made an intentional and deliberate misrepresentation to the court, and that he intentionally failed to comply with an order of the court directing him to proceed with a contract for deed cancellation. This court adopts the findings of the referee.

Respondent was admitted to practice in this state in 1960. He has been engaged in many branches of the practice of law, both public and private. He was one of the founders of and has since been active in Lawyers Concerned for Lawyers, an organization whose purpose is to help lawyers with alcohol and chemical dependency problems. Respondent commenced his present law practice as a sole practitioner in 1977.

Many of respondent's difficulties occurred after April of 1979. One of his children was the victim of a crime near Madison, Wisconsin. Because of her age and physical and mental condition, respondent spent considerable time traveling to and from Wisconsin, attending court hearings and counseling with authorities and with his daughter. During this period of time, respondent was remiss in corresponding with opposing counsel in one dissolution, in returning calls of clients, and in another dissolution case of failing to commence the action for his client or in keeping her advised of the reasons therefor. The referee's finding of dilatory practice is supported by the evidence notwithstanding respondent's personal family problems at the time.

Starting in the fall of 1977, respondent represented a wife in a dissolution matter (the Stribley dissolution). The parties had agreed, following negotiations, on a stipulation for dividing property to be distributed. Respondent was to draft the stipulation. He did so and forwarded the proposed stipulation to opposing counsel who duly objected to certain features of it by telephone. Respondent then redrafted the stipulation, taking into consideration those stated objections. He mailed the new findings to opposing counsel on October 4, 1977, and on the same day mailed the findings to the court, advising the court that opposing counsel and he had discussed them and agreed as to form and content.[1] The referee found the charge of intentional misrepresentation to the court was not sustained by clear and convincing evidence. We agree. The most that was demonstrated by the evidence was a misunderstanding between counsel.

Later, in the same dissolution, following a motion made by the husband's attorney, respondent was ordered by the court to prepare and expediently commence cancellation proceedings of a contract for deed for the sale of the homestead of the parties. Respondent prepared the notice of cancellation but never served or filed the same. He did not do so because he had received assurances from the buyer or the buyer's agent that the balance of the purchase price would be forthcoming shortly. The buyer was disabled and an invalid; respondent and his client were sympathetic to the buy-

---

1. One of the terms of the stipulation was that the wife was to receive the homestead subject to a $15,000 lien in favor of the husband which was to be paid within six months. If it had not been so paid, the homestead was to be sold, and the net proceeds split 60% to the wife and 40% to the husband. The "splitting" provision was apparently not included in either draft. The parties apparently figured the wife would pay the lien within the time allotted and therefore felt that no amendment to the stipulation was necessary.

er and did not want to have him forfeit the $19,000 he had already paid. Since they had received assurances that the balance would be forthcoming soon, they felt the foreclosure proceeding would be unwarranted because of the redemption period allowed by law. The evidence on this issue supports the referee's finding that deliberate failure to comply with the court order was not clearly and convincingly shown. If there had been intentional and defiant disregard of the court's order, serious sanctions would have been imposed. *In re Daly*, 291 Minn. 488, 189 N.W.2d 176 (1971); *In re Swiggum*, 267 Minn. 548, 125 N.W.2d 169 (1963). Such was not the case here.

Respondent concedes that during the period involved he maintained inadequate books and records. This was a violation of DR 9–102(B)(3) and DR 9–103(A) of the Minnesota Code of Professional Responsibility. Since this matter was instituted by the Lawyers Professional Responsibility Board, respondent has set up an adequate system of books and records.

The referee found that respondent had converted funds belonging to his clients. Because such conduct usually calls for disbarment, *In re Primus*, 283 N.W.2d 519 (Minn.1979), *In re O'Malley*, 225 Minn. 387, 30 N.W.2d 693 (1948), it is necessary to recite the facts with respect thereto. Donald Mager retained respondent to represent him in a real estate transaction. In connection with that transaction, respondent was given $1,000 to hold as escrow agent. James Bublitz retained respondent in a dissolution matter. Respondent received $8,000 belonging to Bublitz and deposited it in his trust account. After deducting attorneys fees and expenses in the Bublitz matter, Bublitz was paid the balance owed to him. In order to do this, part of the Mager funds were used to cover it. When the real estate problem was "cleared up," respondent properly and fully applied the funds in the escrow account so neither Mager nor Bublitz suffered any loss. Respondent did

not personally profit from this commingling of funds. In the Stribley dissolution matter, respondent received certain funds which were placed in his trust account. During early 1979, respondent did not have in his trust account sufficient funds to "cover" the Stribley and Mager deposits. In neither case, however, were any of those funds personally converted by respondent for his own use nor had anyone sustained any losses.[2]

■ A careful reading of the record demonstrates that respondent did not intentionally convert funds to his own use. Rather, the state of his trust account appears to be due to poor bookkeeping methods. Misappropriation is not excused because improper handling of client funds resulted from mismanagement. *Iversen v. New York State Bar Association*, 51 A.D.2d 422, 381 N.Y. S.2d 711 (1976). However, most cases resulting in disbarment for misappropriation of client funds have involved intentional conversion often accompanied by deliberate actions to conceal those conversions. *In re Okerman*, 310 N.W.2d 568 (Minn.1981); *In re Primus*, 283 N.W.2d 519 (Minn.1979); *In re Wackerbarth*, 287 N.W.2d 651 (Minn. 1979). Here, respondent did not intentionally convert client funds. He furnished his books and records, such as they were, to the Lawyers Professional Responsibility Board. There was no attempt to cover up the facts. No client, or any other person, sustained any loss as a result of his commingling of funds. He promptly changed his bookkeeping system so as to have adequate records. Those facts, plus the difficult time respondent was having with his family problems during a part of this time, mitigate against a severe sentence of disbarment or suspension. *In re Shaw*, 298 N.W.2d 133 (Minn. 1980).

A lawyer has a duty not only to maintain complete records of money or property of a client coming into his or her possession but

---

**2.** In the Stribley case, respondent did withdraw from the monies on deposit his claimed attorneys fees without securing the prior authorization of his client. She was subsequently so informed that the withdrawal had been made. There is no finding that he withdrew more than the fees he had earned.

also to render appropriate accounts to the client. DR 9–102(B)(3). In the Stribley dissolution, the respondent failed to do so notwithstanding repeated requests from his client and repeated promises on his part to comply. He should have done so when requested in November and December 1979. By the spring of 1980, the relationship between respondent and his client had deteriorated. His client had threatened to file an ethics complaint with the Board and to sue him for malpractice. On "advice of counsel," respondent failed to provide an accounting after May of 1980 because of the pendency of those proceedings. His client has received an accounting and all funds due her from respondent except $1,762 which represents $762 interest refund caused by respondent's neglect and dilatory conduct in closing the contract for deed real estate matter and $1,000 for her husband's closing costs and expenses caused by that neglect. Respondent assured his client that he would be responsible for those sums.

The referee recommended a public censure, that respondent pay a reasonable sum to reimburse the Lawyers Professional Responsibility Board for the expenses of the investigation and hearings, that respondent be supervised on probation for a period of two years and that respondent make restitution to Mrs. Stribley to whom he owes $1,762. The Board asks for disbarment, or at least suspension, of the respondent from the practice of law in this state.

We place great weight upon the recommendations of the referee concerning disciplinary actions. *In re Scallen*, 269 N.W.2d 834 (Minn.1978). However, the final responsibility for discipline lies with this court. Therefore, we occasionally find it necessary to modify the referee's recommendations in the exercise of our responsibility. We hold that respondent be publicly reprimanded for his neglect of duties to his client, for his inadequate bookkeeping and mishandling of trust fund accounts, for his procrastination and other dilatory practices. Further, the respondent shall forthwith reimburse his client Pauline Stribley the sum of $1,762, and he shall partially reimburse the Lawyers Professional Responsibility Board the reasonable charges for the expenses of these disciplinary proceedings in the amount of $500. Instead of two years supervision by an attorney, however, we hold that respondent shall allow some attorney at law experienced in law office management procedures selected by the Lawyers Professional Responsibility Board to implement and set up a bookkeeping procedure in respondent's office and report back to the Lawyers Professional Responsibility Board at least annually for a period of two years that he has examined those books and found them to be in compliance with all of the canons regulating the maintenance of books and trust accounts reflecting the status of client funds at all times.

AMDAHL, C. J., took no part in the consideration or decision of this case.