In the Matter of the Application for the DISCIPLINE OF James V. BEAL, an Attorney at Law of the State of Minnesota.

No. C5–82–466.

Supreme Court of Minnesota.

Oct. 4, 1985.

William J. Wernz, Director of Lawyers Professional Responsibility, St. Paul, for appellant.

Fred Allen, Minneapolis, for respondent.

PER CURIAM.

The Lawyers Professional Responsibility Board (LPRB) filed a petition for disciplinary action against respondent, James V. Beal, charging him with numerous violations of the Code of Professional Responsibility. The referee appointed by this court found facts supporting several of the alleged violations and recommended that respondent be placed on probation for 3 years. Subsequent to the referee's findings, the LPRB filed a supplemental petition charging two additional counts of professional misconduct. The same referee, in a supplemental hearing, found facts supporting one of the counts and recommended that Beal be suspended for 1 year.

The referee found that Beal had committed the following acts of misconduct: (1) commingling of personal and client funds; (2) failure to keep required books and records; (3) failure to account properly to clients about the status of their trust funds; (4) filing of improper attorney liens; and (5) charging and collecting illegal fees. We conclude that Beal's misconduct warrants a 3-month suspension followed by 1 year of probation.

### Commingling

Beal has been licensed to practice law in Minnesota since 1968 and currently practices in Golden Valley. In his practice, Beal maintains a trust account in which he

places client funds that he has received, as required by DR 9–102(A), Minnesota Code of Professional Responsibility (MCPR). From 1979 until at least the time of the initial referee's hearing in December 1983, Beal commingled personal funds with client funds in the trust account in violation of DR 9–102(A), MCPR. Beal admits the violation.

■ An attorney's commingling of personal and client funds warrants serious professional discipline. *In re Serstock*, 316 N.W.2d 559, 561 (Minn.1982). The particular sanction to be imposed, however, depends upon the specific facts of the case. *In re Heffernan*, 351 N.W.2d 13, 14 (Minn. 1984). This court has never imposed disbarment or suspension for commingling alone. Even where commingling was combined with misappropriation, we have, when presented with appropriate facts, declined to impose a suspension. *See In re Fling*, 316 N.W.2d 556 (Minn.1982). In Beal's case, it is undisputed that his commingling was not fraudulent in nature and that there was no misappropriation. There was no evidence that any client lost money as a result of Beal's actions.

### *Failure to Keep Books and Records*

Beal certified in 1979, 1980, and 1981 on his annual attorney registration statements that his trust account records complied with the requirements of DR 1–102(A)(4) and DR 9–103 (now DR 9–104), MCPR. Disciplinary Rule 9–104(A) provides that "[e]very lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, his private practice of law, and to establish compliance with DR 9–102 and DR 9–103." Beal has admitted that prior to 1983 he was not in technical compliance with the rule. He first began keeping general computer ledgers in response to the LPRB's discovery request. Prior to this, his chief record of trust account disbursements was his checkbook register. He had never done any written reconciliations of his records with

bank statements. Lawyers Professional Responsibility Board Amended Opinion No. 9 requires attorneys to keep subsidiary ledgers for each client for whom monies have been received, showing dates of receipts and disbursements. While Beal insisted that he did keep contemporaneous subsidiary ledgers, he was unable to produce any of these at the hearing and ultimately stated that these "ledgers" were essentially closing statements prepared at the time of the final disbursement of funds to the client. Beal's failure to keep the required trust account and office account books and records violated DR 1–102(A)(4), DR 9–104(A), MCPR, and Opinion No. 9. Beal's actions, however, were not deliberate attempts to file false certifications.

The maintenance of proper trust account records is vital to the practice of the legal profession, since it serves to protect the client and avoid even the appearance of professional impropriety. *In re Shaw*, 298 N.W.2d 133, 135 (Minn.1980). This court has been presented with numerous cases of misconduct involving failure to keep required account books and records. *See, e.g., In re Ray*, 368 N.W.2d 924 (Minn. 1985); *In re Heffernan*, 351 N.W.2d 13; *In re Lee*, 334 N.W.2d 163 (Minn.1983). From these cases, we have become aware that much of this misconduct derives not from the attorney's disregard for his or her clients' interests or for the disciplinary rules, but, rather, from failure to know and understand fundamental principles of accounting and general business practice. As a result, in determining the severity of the sanction to impose, we have often looked to the presence of mitigating circumstances, such as the attorney's cooperation with the board in its investigation, the lack of any attempts on the attorney's part to cover up facts, and the attorney's modification of his or her bookkeeping system so as to have adequate records. *See In re Fling*, 316 N.W.2d 556. Beal cooperated fully with the LPRB by furnishing such records as existed. He made no attempt to cover up facts. He has attempted to make changes in his recordkeeping methods by hiring an accountant to computerize

records and to straighten out previous accounting problems. The accountant testified that he has been running general ledgers on a monthly basis since the summer of 1983.

### Failure to Account

Beal represented Lee Engen in a workers' compensation case between 1979 and 1981. Beal had been recommended to Engen by his law partner, who had done previous legal work for Engen and Engen's girlfriend. As a result of Beal's efforts, in November 1979 Engen was awarded $13,410.58, which Beal received in trust in January 1980. Beal also received a $1,753.50 partial settlement in trust for Engen. Out of these funds Beal drew attorney fees for himself and his partner, made several disbursements to Engen, made payments to Engen's creditors, and paid expert witness fees. Engen knew of, and consented to, all disbursements. Beal sent Engen statements of his trust account activity on four occasions, and these were the only accountings Engen ever received. Each accounting contained errors and was inconsistent with the others. Other than in these four erroneous accountings, Beal never furnished his client with a written statement for professional services rendered. The accounting of the funds which Beal submitted to the LPRB in preparation for the referee's hearing also contained inaccuracies. To the time of oral argument, there was no evidence that Beal had produced a complete and accurate accounting of his client's trust funds.

We hold that Beal violated DR 9–102(B)(3) and (4), MCPR, in failing to account properly for the trust funds. This court has treated such failures as serious misconduct. For example, in *In re Kotts*, 364 N.W.2d 400 (Minn.1985), we conditioned reinstatement of a suspended attorney upon proof that he had provided written accountings to his former clients. We do likewise in the present case.

### Filing Improper Attorney Liens

In 1980, Beal represented a group of shareholders in a shareholder derivative suit against M.R.I. corporation, a company in the rubbish hauling business. After expending a substantial amount of time on the case, he was dismissed by the shareholders. Over his objections, the shareholders settled the suit. In October 1980, Beal sent the shareholders he had represented a bill for $23,092.95 for attorney fees. The shareholders did not pay the bill. In November 1980, he filed attorney liens against the homesteads of five shareholders. Minn.Stat. § 481.13(1) (1984) grants an attorney a lien "upon the interest of his client in any money or property involved in or affected by any action or proceeding in which he may have been employed." Beal's filing of the attorney liens occurred prior to this court's holding in *Northwestern National Bank of South St. Paul v. Kroll*, 306 N.W.2d 104 (Minn.1981), that attorney liens may not attach to homestead property exempt from execution. The shareholders operated out of their homes private corporations which were also in the rubbish hauling business. Beal testified that these private corporations would have been affected by the outcome of the suit against M.R.I. and that he believed in good faith that the homesteads were related to the shareholder derivative suit. An attorney formerly associated with Beal's firm, however, stated that the litigation had nothing to do with the homesteads of any of the shareholders. When the shareholders counterclaimed for slander of title, Beal immediately removed the attorney liens. We uphold the referee's finding that the filing of the attorney liens was improper and conclude that respondent's actions violated DR 5–103(A), MCPR.

### Illegal Fees

The most serious charge of professional misconduct raised against Beal involves the charging of illegal fees in workers' compensation cases. Evidence was presented of two instances in which he charged such fees. The first instance involves his representation of John Hoerner in a workers' compensation case in 1975. Hoerner

agreed to pay Beal attorney fees of 25% of compensation paid. The case was settled without a trial. State law operative at all relevant times required approval of attorney fees by the workers' compensation commission. *See* Minn.Stat. § 176.081 (1978). In 1979, Beal filed a petition for award of attorney fees in the amount of $5,600. In November 1979, the workers' compensation judge made his order determining attorney fees in the amount of $2,000. State law permitted an attorney to petition for attorney fees in excess of the amount approved by the workers' compensation judge. *See* Minn.Stat. § 176.081, subd. 2 (1978). Beal, however, never petitioned for additional fees. Instead, he sent a letter to his client requesting attorney fees in the amount of $5,000, less the $2,000 awarded by the judge's order. Hoerner voluntarily paid Beal the $3,000 difference, and no complaint was made about the fees until November 1983, nearly 4 years later. Hoerner's new attorney demanded that Beal explain the fee or return the money. He promptly returned the money.

Beal attempted to explain that the additional $3,000 was for other services he rendered as an attorney. The record does not support his claim. In contrast to the detailed documentation he presented regarding his representation in the workers' compensation matter, he had no documentation of any sort regarding other services he had provided to his client. Moreover, even if Beal did in fact provide other services, his letter of November 1979, explaining the compensation judge's order and requesting an additional $3,000 "in this matter," is not susceptible of an interpretation that the $3,000 was for those other services. Beal's charging the additional $3,000 constituted the collection of an illegal fee in violation of DR 2–106(A), MCPR. It is apparent, however, that for at least 4 years the client believed that the fee charged was reasonable in light of whatever services were rendered.

The second instance of collecting illegal fees was Beal's handling of Lee Engen's workers' compensation case. Beal testified that in 1979, when Engen first came to see him about the workers' compensation matter, he told Engen he was not interested in the case because of the statutory limits on fees. State law at that time limited attorney fees in workers' compensation cases to 25% of the first $4,000 of compensation awarded and 20% of the next $20,000, unless a petition for additional fees was filed and approved. Minn.Stat. § 176.081, subds. 1 and 2 (1978). Engen pleaded with Beal to take the case. Beal would only accept the case on the condition that attorney fees would be 25% of all the compensation awarded. Even though informed of the statutory limits, Engen agreed to this. Subsequently, Beal successfully obtained workers' compensation benefits for his client in a case which all parties agree was difficult. On November 26, 1979, the compensation judge ordered that Beal's attorney fees were to be 20% of the compensation award "not to exceed the aggregate of $5,000.00." Beal did not petition for additional attorney fees by the time of the hearing. By January 1981, he had received $5,000 in attorney fees from the compensation insurer alone. In addition he received directly from Engen 25% of the retraining compensation and mileage reimbursements which Engen had been paid.

The referee found that Beal charged and collected fees in excess of the $5,000 authorized by the compensation judge and concluded that these were illegal fees in violation of DR 2–106(A), MCPR. The referee also concluded, however, that since the fee agreement was not excessive in view of the difficulty of the case, Beal should be permitted to petition for the additional fees. He ultimately did petition for additional attorney fees, and most of the additional fees were approved. The compensation judge ordered Beal to reimburse his client for the remainder, and Beal has complied. The subsequent approval of the fees by the compensation judge does not exculpate Beal for his initial misconduct in collecting the fees. We uphold the referee's conclusion that Beal violated DR 2–106(A), MCPR.

Beal's collection of fees in excess of those authorized by the workers' compensation commission is very serious misconduct, by itself warranting suspension. The severity of the suspension, however, depends upon a consideration of all the facts and circumstances. In determining the appropriate sanction, we have looked to prior discipline cases as a guide. *In re Serstock,* 316 N.W.2d 559, 561. While we have never previously considered misconduct involving collection of illegal workers' compensation attorney fees, we were recently presented with a case involving the collection of illegal attorney fees in another context. In *In re Dillon,* 371 N.W.2d 548 (Minn.1985), an attorney who represented his client in a wrongful death action was found to have charged a fee not provided for in the fee agreement, with no intention of having it approved by the court as required by Minn. Stat. § 573.02 (1984). In that case, we imposed a 1-year suspension. The LPRB acknowledged in oral argument that the incident of misconduct in *Dillon* was more serious than that presented in Beal's case. Also, unlike the *Dillon* case, both of the complainants here agreed to the fees they paid to Beal and apparently thought they were reasonable at the time they paid them.

### Sanction

■ We place great weight upon the referee's recommendation, but the final responsibility for determining appropriate discipline rests solely with this court. *In re Fling,* 316 N.W.2d 556, 559; *In re Daly,* 291 Minn. 488, 490, 189 N.W.2d 176, 179 (1971). Determining the appropriate discipline requires weighing the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the harm to the public, and the harm to the legal profession. *In re Agnew,* 311 N.W.2d 869, 872 (Minn.1981).

The facts indicate that Beal has engaged in various acts of professional misconduct, many of them serious. They do not suggest, however, that Beal ever sought to defraud his clients or that he ever acted in intentional or reckless disregard of their interests. Instead, the evidence portrays a busy attorney with no previous record of misconduct who demonstrated poor judgment in handling workers' compensation cases and filing attorney liens and who failed to understand and implement the basic business and recordkeeping procedures demanded by the legal profession. With respect to the latter problem, Beal has begun to remedy the situation by hiring an accountant and by automating his recordkeeping. Also, several clients and other witnesses testified to respondent's good character and to the significant work he has done in aiding alcoholics to seek and receive treatment. These facts must be weighed against the seriousness of the misconduct in determining the appropriate sanction.

■ Accordingly, we impose the following sanctions:

1. James V. Beal is hereby suspended from the practice of law for a period of 3 months from the date of this judgment; compliance with Rule 18(e) of the Rules on Lawyers Professional Responsibility shall not be a condition of reinstatement;

2. Reinstatement is conditioned upon proof that Beal has provided a complete and accurate written accounting to Lee Engen regarding Engen's trust funds; and

3. Beal is placed on probation for a minimum of 1 year from the date of reinstatement subject to the following conditions:

   a. That Beal fulfill periodic reporting and other reasonable requirements that the LPRB might make;

   b. That Beal commit no further violations of the MCPR;

   c. That Beal maintain books and records concerning property and funds held on behalf of clients in compliance with the MCPR, with such books and records subject to review by the director of the LPRB upon request; and

   d. That the probationary period continue until Beal has successfully com-

pleted the multistate professional responsibility examination.