In the Matter of the Application for the Discipline of Clark F. ISAACS, an Attorney at Law of the State of Minnesota.

No. C6–84–2215.

Supreme Court of Minnesota.

June 5, 1987.

William J. Wernz, Director of Lawyers Professional Responsibility, Candice M. Hojan, Senior Asst. Director, St. Paul, for appellant.

Theodore J. Collins, Dan O'Connell, St. Paul, for respondent.

## PER CURIAM.

Following a hearing on a petition for disciplinary action, the referee appointed by this court recommended that attorney Clark F. Isaacs ("Isaacs") be publicly reprimanded, that he be suspended from the practice of law for five years, and that the suspension be stayed on the following conditions:

    (a) That Respondent enter and successfully complete an in-patient chemical dependency program approved by the Minnesota Supreme Court.

    (b) That, upon completion of the in-patient chemical dependency program, Respondent continue participating in Alcoholics Anonymous and Lawyers Concerned for Lawyers.

    (c) That Respondent maintain the safeguards already implemented by him including the requirement of his prior approval and signature on all trust account and office account checks and his accountant's pre-audit of all trust account disbursements.

    (d) That Respondent continue to maintain the computerized trust account subsidiary ledger and reconcile the ledger to the trust account bank statements.

Isaacs has been licensed to practice law in Minnesota since 1966. He has been in private practice since 1970. The referee found that Isaacs had violated specific rules of the Minnesota Code of Professional Responsibility between 1980 and 1984 by failing to hold client funds in trust, by misappropriating client funds, by commingling client and other funds, by failing to maintain proper books and records and falsely certifying that they were maintained, and by failing to promptly disburse settlement proceeds. The referee observed that, absent mitigating factors, Isaacs' conduct would warrant disbarment or long suspension. The referee, however, found mitigating factors.

Isaacs represented Bruce and Cecilia Wruck in a personal injury action against four defendants. Around August 1980, Isaacs told the Wrucks that three of the defendants were willing to settle. A $17,150 reserve for future costs against the remaining defendant was set up on advice of Isaacs' co-counsel, and Isaacs told the Wrucks that this reserve, which consisted of one-half attorney funds and one-half Wruck funds, would be put in a certificate of deposit. Isaacs obtained a $15,000 certificate in the law firm's name, but carried it on the books as a trust asset.

Isaacs renewed the certificate several times, reduced it to $10,000, and finally cashed it. The money was applied to law firm debts. Isaacs admits that when the $10,000 was applied to the firm debt some of the Wricks' money was used. Isaacs, however, had made substantial payments to Bruce Wruck by that time. When Isaacs finally realized, after the departure of his former partner in 1983, that there was something wrong with the trust account, he borrowed $15,000 and deposited it in that account and had an accountant, Richard Ramsey ("Ramsey"), attempt to straighten out the account.

Isaacs' partner, Donald Jorgenson, left the firm in April 1983 with less than two weeks' notice, claiming he was on the verge of a nervous breakdown. He did not return. He left Isaacs with a four-page list of active files, including a supreme court brief and an argument before the United States Court of Appeals for the Eighth Circuit which Isaacs had to prepare. This partner was also the firm's treasurer and its "financial person," but when he left, the bank statement had not been reconciled for over a year, client ledgers were improperly maintained, and some bills had not been paid. While "[m]isappropriation is not excused because improper handling of client funds resulted from mismanagement," *In*

**528**

*re Fling*, 316 N.W.2d 556, 558 (Minn.1982), Isaacs' prompt change in the bookkeeping system, so as to have adequate records, and his restitution mitigate against severe discipline.

Isaacs was also retained by Denice Rahn to represent her in a personal injury case, and on May 10, 1985, he received a check to settle that case. Rahn and her husband endorsed the check, and Isaacs deposited it in his trust account and drew a check representing his fee. Ten days later Rahn came to Isaacs' office to receive her money and signed a settlement statement providing for Isaacs to retain funds to pay her medical bills, which he had previously guaranteed. Isaacs transferred these funds to his office account. Both Isaacs and his accountant, Ramsey, erroneously understood from a conversation with the Director's office that the checks for these expenses should be written on the office account and reimbursed from the trust account. Isaacs transferred the money before paying the bills because there were insufficient funds in the office account to pay them.

Isaacs told Rahn that he would verify the amount of the bills before paying them and he testified that he asked his secretary to do so. Isaacs did not pay these bills promptly and became involved in investigating a rape case and a lengthy trial. The funds deposited to pay Rahn's medical bills were used to pay Isaacs' payroll and rent expenses. Isaacs testified that he saw what had happened when he checked the account balance during the rape trial, but that he did not have the money to do anything about it.

Isaacs spoke with Rahn, who was concerned that the bills had not been paid, but did not tell her about the problem because he was ashamed. Rahn wrote Isaacs, stating that she would make a complaint to the Board of Professional Responsibility if her bills were not paid by July 19, 1985. Isaacs borrowed money from his brother, deposited it in his office account, and had the checks to pay the medical bills hand-delivered. Several of the checks failed to clear, however, because the Internal Revenue Service, without prior notification, levied on Isaacs' account, due, according to the referee, to the failure of Isaacs' former partner to remit payroll taxes on a current basis.

Isaacs had additional professional problems. In October 1984, he was negotiating to sell the firm to two associates he hired after Jorgenson's departure. Over a weekend these associates removed about 150 files and the firm's client index cards from the office, and Isaacs had to sue in district court to secure their return.

Although, as the referee concluded, this partner and associate misconduct is not sufficient to insulate Isaacs from his own misconduct and lack of responsibility, these problems in his professional life "appear temporary in nature and they are circumstances to be considered in imposing discipline." *In re Heffernan*, 351 N.W.2d 13, 15 (Minn.1984).

The Director of the Board of Professional Responsibility disputed several of the referee's findings and conclusions, including that the misappropriation of the Wrucks' funds was unintentional and that the misappropriation of Denice Rahn's funds was negligent. This court, however, gives great weight to the referee's findings and conclusions in disciplinary proceedings, *see In re Getty*, 401 N.W.2d 668, 670 (Minn. 1987), and, in this case, there is evidence to support them.

The referee also found that Isaacs' alcoholism was a mitigating factor. In *In re Johnson*, 322 N.W.2d 616 (Minn.1982), this court adopted the following criteria to evaluate alcoholism as a mitigating factor:

1. That the accused attorney is affected by alcoholism.
2. That the alcoholism caused the misconduct.
3. That the accused attorney is recovering from alcoholism and from any other disorders which caused or contributed to the misconduct.
4. That the recovery has arrested the misconduct and the misconduct is not apt to reoccur.

5. That the accused attorney must establish these criteria by clear and convincing evidence.

*Id.* at 618.

Both medical and lay testimony established that Isaacs is an alcoholic. The Director, however, challenges the referee's finding that Isaacs' misconduct was caused by or was a result of his alcoholism. Isaacs testified that his alcoholism caused his failure to supervise Jorgenson.

We recognized in *Johnson* that the second criterion, causation, would be the critical issue in each case. *Id.* We continue to uphold this concept. We also stated in *Johnson* that the testimony of the accused attorney that alcohol was the cause of the misconduct is insufficient to establish causation with sufficient clarity. *Id.* at 618–19. Here, Isaacs' estranged wife testified that his whole life seemed to revolve around alcohol, that Isaacs had blackouts from drinking, and that from 1980 to 1983 he drank himself into oblivion almost every night. Isaacs' daughter also testified that before he had quit drinking Isaacs was always drunk when out of the office and that since he had quit drinking he was more aware of things. It was during this period, 1980 to spring 1984, that all the misconduct other than the Rahn incident occurred. The medical expert also stated that the criteria he used for evaluation showed clearly how severely Isaacs' dependency affected his life.

The Director also claims that the third and fourth *Johnson* criteria, recovery and prognosis, have not been met. Medical testimony, however, was that Isaacs was currently not "actively sick" with alcoholism and that he "is recovering." Both Isaacs and his accountant testified concerning the measures taken to insure that this type of misconduct would not reoccur. Isaacs has also remained sober since May 1984, and his trust records show that, with the exception of the Rahn matter, there have been sufficient funds to meet trust obligations since January 1, 1985. These specific matters have been resolved.

The Rahn matter is troubling because it occurred after Isaacs stopped drinking.

The referee's recommendation suggests that he believed this misconduct was a result of the "dry drunk" syndrome and, therefore, causally related to Isaacs' alcoholism. The medical expert, however, was not too helpful on this matter. He could not clearly identify a dry drunk syndrome in Isaacs although there were clues that one may exist.

██  Although this court has final responsibility for appropriate discipline of attorneys, it places great weight upon the recommendations of the referee. *In re Fling*, 316 N.W.2d 556, 559 (Minn.1982); *In re Scallen*, 269 N.W.2d 834, 841 (Minn. 1978). Here the referee recommended a five-year suspension, stayed if Isaacs complied with the enumerated conditions. Whatever discipline may be imposed, this court must weigh: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary rule violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Franke*, 345 N.W.2d 224, 228 (Minn.1984). The purpose of attorney discipline "is to protect the public and the court and to serve as a deterrent against future misconduct." *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn. 1983); *In re Hanson*, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960). It is not designed to punish the attorney. *Id.* at 233, 103 N.W.2d at 864.

██  Here the referee found that Isaacs' misappropriation of the Wruck and Rahn funds was unintentional or negligent rather than intentional, that Isaacs had changed his bookkeeping system to assure that this misconduct would not reoccur, that there were disruptions in Isaacs' professional life because of the misconduct of others, and that Isaacs' alcoholism was a mitigating factor. Even though we find that clear and convincing evidence is lacking to meet the *Johnson* standard that alcoholism caused all of the misconduct involved in this case, we adopt the referee's recommendations based upon the totality of mitigating factors and the precedents cited above.

**530**

Clark F. Isaacs, attorney at law, State of Minnesota, is herewith publicly reprimanded for his violations of disciplinary rules. Further, he is suspended from the practice of law for five years. This suspension is stayed on the following terms and conditions:

(1) That Isaacs enter and successfully complete the inpatient treatment program at Hazelden Rehabilitation Center;

(2) That upon completion of that program, Isaacs continue to participate in Alcoholics Anonymous and Lawyers Concerned for Lawyers;

(3) That Isaacs continue to maintain the safeguards already implemented by him, including the requirement of his prior approval and signature on all trust account and office account checks and his accountant's pre-audit of all trust account disbursements;

(4) That Isaacs continue to maintain the computerized trust account subsidiary ledger and reconcile the ledger to the trust account bank statements;

(5) That Isaacs make periodic reports to the Lawyers Professional Responsibility Board regarding his compliance with these terms and conditions and that Isaacs pay the reasonable expenses incurred by the Board in supervising his compliance.

(6) That, should Isaacs not comply with the above conditions, this court would entertain a petition by the Director for disbarment.

It is so ordered.