**In re Petition for DISCIPLINARY ACTION AGAINST Clark F. ISAACS, an Attorney at Law of the State of Minnesota.**

No. C6–84–2215.

Supreme Court of Minnesota.

Feb. 9, 1990.

Martin A. Cole, Sr. Asst. Director, William J. Wernz, Director of the Office of Lawyers Professional Responsibility, St. Paul, for appellant.

James E. Ostgard, Minneapolis, for respondent.

Heard, considered, and decided by the Court en banc.

## OPINION

PER CURIAM.

Respondent Clark F. Isaacs, who was given a stayed five-year suspension in a 1987 disciplinary proceeding, is charged with violating the conditions of his stayed suspension and several rules of professional conduct. Respondent is charged with misappropriating client funds from his trust account, failing to maintain proper trust account records, neglecting client

matters, failing to return a client file, and failing to adequately communicate with clients. A referee and the Director of Lawyers Professional Responsibility ("Director") recommend respondent be disbarred from the practice of law in Minnesota. We agree.

I.

Since respondent was admitted to the practice of law in Minnesota in October 1966, he received four private warnings or admonitions. Additionally, in *In re Isaacs*, 406 N.W.2d 526 (Minn.1987) ("*Isaacs I*"), we found Clark F. Isaacs failed to hold client funds in trust, misappropriated client funds, commingled client and other funds, failed to maintain proper books and records and falsely certified they were maintained, and failed to promptly disburse settlement proceeds. The first referee felt this misconduct normally would warrant disbarment or a long suspension, but recommended a stayed five-year suspension because he found respondent's alcoholism to be a mitigating factor. *Id.* at 528. We did not believe there was clear and convincing evidence of a causal link between the alcoholism and all Isaacs' misconduct. *Id.* at 529. In his *Isaacs I* brief, however, respondent submitted to this court that he:

> has modified the bookkeeping system to correct this [problem, the misappropriation] * * * was an isolated incident, * * * [h]e now has a complete understanding of the proper procedures involved with the handling of client trust funds, has corrected the trust account records, * * * [and a]ll client funds have been restored.

Thus, based upon the totality of mitigating circumstances, including respondent's alcoholism, the apparent temporary nature of the violations, and changes respondent said he made in his bookkeeping procedures and balancing of his trust account, we ordered a public reprimand and a five-year suspension from practice, which was stayed upon respondent's compliance with five conditions. These conditions were:

(1) That Isaacs enter and successfully complete the inpatient treatment program at Hazelden Rehabilitation Center;

(2) That upon completion of that program, Isaacs continue to participate in Alcoholics Anonymous and Lawyers Concerned for Lawyers;

(3) That Isaacs continue to maintain the safeguards already implemented by him, including the requirement of his prior approval and signature on all trust account and office account checks and his accountant's pre-audit of all trust account disbursements;

(4) That Isaacs continue to maintain the computerized trust account subsidiary ledger and reconcile the ledger to the trust account bank statements;

(5) That Isaacs make periodic reports to the Lawyers Professional Responsibility Board regarding his compliance with these terms and conditions and that Isaacs pay the reasonable expenses incurred by the Board in supervising his compliance.

*Id.* at 530. Lastly, we warned: "[S]hould Isaacs not comply with the above conditions, this court would entertain a petition by the Director for disbarment." *Id.*

At all times since at least January 1987, respondent's law office trust account balance was insufficient to meet the amount respondent should have held in trust for his clients. The Director hired a certified public accountant to examine respondent's trust account records. Respondent also made certain adjustments to specific client ledgers. Depending on whose calculations are adopted, each quarterly shortage in 1987 and 1988 was between $8,600 and $13,200. Respondent admits the trust account was short at least $8,000 until January 1989 when he made partial restitution of approximately $6,000.

Respondent also failed to maintain his law office trust account books and records in complete compliance with Minn.R.Prof. Conduct 1.15(g) and this court's 1987 order. Specifically, respondent did not perform or maintain proper monthly reconciliations of his trust account ledgers and compare these amounts to his bank statement.

The present proceeding also includes three client neglect-related professional violations. Respondent failed to communicate with and take action on Vu Yang's behalf. Isaacs failed to take action on Underwriting Adjusting Company's (UAC) subrogation claim and failed to communicate with UAC despite numerous requests for information. Respondent also failed to return Napoleon Barbeau's John Hancock Company materials after several requests and failed to adequately communicate with Barbeau.

## II.

■ Given these facts, we are left with the question of what is the appropriate discipline for an attorney, already subject to a stayed five-year suspension order for similar misconduct, who again misappropriated client funds from his trust account, failed to maintain proper trust account records, neglected client matters, failed to timely return client documents, and failed to adequately communicate with clients?

■ The purposes of attorney discipline are to protect the courts, the legal profession, and the public, guard the administration of justice, and deter similar misconduct. *In re Levenstein,* 438 N.W.2d 665, 668 (Minn.1989); *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983). In determining the appropriate discipline, we carefully consider the nature of the misconduct; the cumulative weight of the disciplinary violations; the harm to the public; and the harm to the legal profession. *Levenstein,* 438 N.W.2d at 668. The discipline imposed depends on the specific facts of the misconduct, together with any aggravating or mitigating circumstances. *In re Heffernan,* 351 N.W.2d 13, 14 (Minn.1984).

■ Misappropriation of client funds reflects adversely on an attorney's fitness to practice law and warrants serious sanctions, unless substantial mitigating circumstances exist. *In re Wareham,* 413 N.W.2d 820, 821 (Minn.1987); *In re Simonson,* 365 N.W.2d 259, 261 (Minn.1985). Misappropriation occurs whenever funds belonging to a client are not kept in trust and are used for any purpose other than that specified by the client. Because respondent fails to adequately explain the current shortages, as also happened in *Isaacs I,* there clearly is misappropriation here and it is logical to infer these funds were used for Isaacs' benefit. We believe Isaacs either knew or should have known of these shortages. While there is no direct evidence Isaacs' misappropriation was intentional or recent, respondent's negligent or unintentional misappropriation of trust account funds is a repeated and continuing occurrence.

"The maintenance of proper trust account records is vital to the practice of the legal profession, since it serves to protect the client and avoid even the appearance of professional impropriety." *In re Beal,* 374 N.W.2d 715, 716 (Minn.1985). Respondent's trust account records continually have been inadequate. Had respondent promptly performed the proper monthly reconciliations, he would have known of his trust account shortages.

■ Repeated and continued neglect of client matters warrants severe sanctions, absent mitigating circumstances. *E.g., In re Logan,* 442 N.W.2d 312, 316 (Minn.1989); *Levenstein,* 438 N.W.2d at 668. Repeated gross neglect has even resulted in disbarment. *Weyhrich,* 339 N.W.2d at 278–79; *In re Braggans,* 280 N.W.2d 34, 35 (Minn. 1979). Respondent was reprimanded in 1976 for failing to keep clients advised of the status of a legal matter, was issued a warning in 1978 for a conflict of interest, was given an admonition in 1983 for failing to correct a misrepresentation to an opposing counsel, and was issued an admonition in 1988 for neglecting a client matter, failing to communicate with a client, and failing to promptly refund unearned fees. The present proceeding involves three additional neglect-related violations, two of which resulted in actual or potential harm to the client.

Although each case stands on its own facts, prior cases are helpful by way of analogy. *Wareham,* 413 N.W.2d at 821. In a similar case, an attorney was only publicly reprimanded and fined for misap-

propriating client funds because of several mitigating circumstances, *Simonson*, 365 N.W.2d at 261–62, but two years later was disbarred for misappropriating trust account and client funds, failing to maintain proper books and records, and failing to withhold payroll taxes. *In re Simonson*, 420 N.W.2d 903, 904–05, 907 (Minn.1988). We felt the repeated nature of Simonson's misconduct was a significant aggravating factor. *Id.* at 906.

Respondent's repeated and numerous professional violations, and his failure to comply with our *Isaacs I* order are aggravating factors here. "After a disciplinary proceeding, this court expects a renewed commitment to comprehensive ethical and professional behavior." *Simonson*, 420 N.W.2d at 906; *see also In re Hart*, 445 N.W.2d 836, 839 (Minn.1989). Where leniency has been shown once, we are reluctant to do so again. Respondent's prior discipline for similar misconduct and new misconduct after our *Isaacs I* order are aggravating factors. *See Simonson*, 420 N.W.2d at 906. Severe discipline may be imposed, given the cumulative weight of the violations, even if no charge singularly would so warrant. *In re Jones*, 383 N.W.2d 303, 307 (Minn.1986) (multiple violations justifying disbarment). Respondent's cumulative and repeated professional violations now justify disbarment.

We stayed respondent's indefinite suspension and possible disbarment in 1987, but only if respondent complied with five conditions. *Isaacs I*, 406 N.W.2d at 530. Isaacs disobeyed that order by failing to fully comply with the two conditions relating to his trust account, plus violating several other professional conduct standards in the interim, which is another aggravating factor. We also showed leniency based upon respondent's representations. *Id.* at 529–30. Despite his submissions in *Isaacs I*, however, the record indicates respondent's trust account shortages date from at least January 1987 and respondent has never completely conformed his trust account recordkeeping. Moreover, respondent admitted at oral argument here that the shortages probably date from 1984, which obviously contradicts his *Isaacs I* brief. Such misrepresentations to this court, espe-

cially in an attorney discipline proceeding, are grounds for severe discipline.

The second referee found five mitigating factors: 1) $1,500 of the trust account shortage can be traced to respondent's former law partner; 2) respondent may not have misappropriated funds for his own benefit; 3) respondent is active in public and charitable organizations; 4) respondent has cooperated with the Director; and 5) respondent acknowledged his law practice has become unmanageable and wishes to leave private practice. Although we accept these mitigating factors, we do not feel they warrant a lesser discipline in this proceeding. "[E]vidence presented in earlier disciplinary proceedings will not support a claim of mitigating circumstances in the present proceedings." *In re Moore*, 431 N.W.2d 261, 263 (Minn.1988). Further, because all the present violations have occurred since Isaacs stopped drinking, respondent's chemical dependency is not a mitigating factor.

We generally require a continuing pattern of serious professional misconduct before disbarring an attorney. *E.g., In re Kaine*, 424 N.W.2d 64, 65 (Minn.1988); *Jones*, 383 N.W.2d at 307. In *Isaacs I* we warned: "[S]hould Isaacs not comply with the [order's] conditions, this court would entertain a petition by the Director for disbarment." 406 N.W.2d at 530. The Director has now brought a petition for disbarment. This court affords great weight to the referee's conclusions. *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987). The second referee recommended disbarment. Final responsibility, however, for determining appropriate discipline rests solely with this court. *Id.* In light of respondent's repeated and continued serious professional misconduct, especially misappropriation of client trust funds and failure to properly maintain trust account records, we find disbarment to be the appropriate discipline.

Respondent Clark F. Isaacs is ordered disbarred.