**In re Petition for DISCIPLINARY ACTION AGAINST Richard T. JELLINGER, an Attorney at Law of the State of Minnesota.**

No. C3–00–1681.

Supreme Court of Minnesota.

May 3, 2001.

Edward J. Cleary, Director, Eric T. Cooperstein, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, for appellants.

Richard T. Jellinger, pro se.

## OPINION

### PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition and supplementary petition for disciplinary action against respondent Richard T. Jellinger requesting indefinite suspension for respondent's failure to cooperate in the disciplinary investigations of overdrafts to his trust account, misuse of his trust account as an operating account and neglect of a client matter. Respondent did not answer and the allegations were deemed admitted pursuant to Rule 13(b), Rules on Lawyers Professional Responsibility (RLPR). Respondent appeared on his own behalf at the oral argument held for the purpose of imposing the appropriate discipline.

Respondent was admitted to practice law in Minnesota on May 13, 1982. Respondent was admonished nearly 13 years ago in July of 1988 for his failure to work diligently on a client matter and communicate with the client in violation of Rules 1.3 and 1.4, Minnesota Rules of Professional Conduct (MRPC). Respondent is engaged as a sole practitioner in general practice in the Anoka County area, practicing primarily in family law and criminal defense. Respondent alleged at oral argument to have a number of existing clients with pending legal matters that needed immediate attention. Respondent further alleged that a suspension would cause delay, disruption and additional costs to his existing clients.

On March 24, 2000, the Director received a notice of overdraft for respondent's client trust account. The Director opened an inquiry file and wrote to respondent twice requesting an explanation and documentation relating to the overdraft. Respondent sent a letter of explanation and the requested documentation on May 11, 2000. Respondent explained that the overdraft was caused by an unexpected debit on the account and stated that no client funds had been deposited in the account. Respondent paid his attorney registration fee in May of 2000 with a check from the trust account and falsely certified that he was properly maintaining his trust account books and records.

In response to the admission that respondent was using his trust account as an operating account, the Director initiated a disciplinary investigation and requested that respondent provide trust and business account records for the previous year. Respondent provided an explanation and some of the requested records on June 12, 2000. Along with his explanation, respondent acknowledged that client funds for a transaction respondent was handling had passed through the trust account between February 28 and March 2, 2000. Respondent indicated that he began using the trust account as an operating account in December 1999, after his business account was closed by the bank following a number of overdrafts. Respondent later acknowledged that use of the trust account as an operating account was improper.

The Director wrote to respondent on June 23, 2000, requesting further explanation and directing respondent to immediately cease using the trust account for business or personal expenses. Respondent made no reply. The Director received notices of nine additional overdrafts on the trust account from the bank during July, indicating that respondent continued to mismanage the account. The Director wrote to respondent three times in July regarding the overdrafts but received no response.

On August 3, 2000, the Director issued charges of unprofessional conduct. Respondent did not reply when served with the charges and failed to appear at the

pre-hearing meeting. On September 20, 2000, the Director personally served respondent with a petition for disciplinary action requesting indefinite suspension from the practice of law and alleging misuse of a trust account and failure to cooperate. Respondent did not answer.

On August 23, 2000, the Director received a complaint regarding respondent from a client alleging that respondent neglected to serve the client's petition for divorce in a timely manner, resulting in adverse financial consequences for the client. The complaint and further investigation revealed that the client terminated representation and requested the return of the $1,000 retainer he paid to respondent. Respondent promised to mail a refund, but did not do so until the client confronted respondent in his office several weeks later. Respondent had not deposited the client's retainer in the trust account but instead signed the check over to a third party. Respondent repaid the client.

The Director immediately sent respondent a notice of investigation of the complaint and a request for an explanation, but respondent made no reply. The Director received notice of an overdraft on respondent's trust account on September 1, 2000, indicating continuing misuse of the trust account. The Director filed a supplementary petition for disciplinary action on October 26, 2000, alleging neglect and additional non-cooperation with the disciplinary investigation and again requesting indefinite suspension. Respondent failed to answer the supplementary petition.

We granted the Director's motion for summary relief on November 28, 2000, and ordered that the allegations in the petition be deemed admitted pursuant to Rule 13(b), RLPR. We directed the parties to submit written proposals regarding the appropriate discipline. The Director re-quested indefinite suspension. Respondent did not submit a proposal.

Respondent appeared before this court at oral argument. He expressed remorse and stated that he took responsibility for his misuse of the trust account and neglect of the client file. Respondent offered to cooperate with the Director and asked for the opportunity to complete his current client matters and rehabilitate himself under the supervision of an attorney while continuing to practice law. Respondent asserted that he was receiving medical treatment for depression.

 Because the allegations against respondent have been deemed admitted, the only issue before us is the appropriate discipline to be imposed. The purpose of an attorney disciplinary proceeding is not to punish the attorney but to protect the public, the courts and the profession. *In re Madsen*, 426 N.W.2d 434, 435 (Minn. 1988). When determining the appropriate discipline for attorney misconduct, this court considers: "(1) the nature of the misconduct; (2) the cumulative weight of the rule violations; (3) the harm to the public; and (4) the harm to the legal profession." *Id.* at 436. Mitigating or aggravating circumstances relating to the misconduct may also be taken into consideration. *In re Haugen*, 543 N.W.2d 372, 375 (Minn.1996). Although we may look to cases involving similar misconduct as a guide in enforcing consistent discipline, "each case is unique and must be examined on its own facts." *In re Dvorak*, 554 N.W.2d 399, 403 (Minn.1996).

Although respondent cooperated with the investigation at first, he failed to cooperate for several months before his appearance at oral argument. By respondent's own admission, he did not read or respond to the Director's inquiries, he commingled client funds with operating funds in the trust account, neglected a

client matter, failed to place a client's retainer in trust, and repaid the client with funds from a personal account.

 Trust account violations and false certification of compliance with the rules governing trust account maintenance constitute serious misconduct, but trust account violations do not always warrant suspension. *E.g., In re Haefele,* 508 N.W.2d 780, 780–81 (Minn.1993). Similarly, while failure to cooperate in a disciplinary investigation is grounds for discipline, suspension is not always warranted. *E.g., In re Stanbury,* 614 N.W.2d 209, 213–14 (Minn. 2000).

Respondent has engaged in misconduct over a period of months. However, respondent's statements of remorse, his renewed commitment to professional and ethical duties, and his offer to cooperate fully with the Director in rehabilitating himself appear sincere. Respondent admitted to the one instance of commingling client funds between February 28 and March 2, 2000, and there is no allegation that the misconduct harmed a client and therefore no restitution was needed. Respondent's failure to place a retainer in trust was serious misconduct, but we note that respondent refunded the client's money with his own personal funds. Respondent committed a series of trust account violations and compounded his misconduct by failing to cooperate in the disciplinary investigation that could have assisted him in returning to proper financial procedures, but it appears that respondent's misconduct was primarily driven by recent escalating difficulty with his finances rather than a history of such misconduct. Further, respondent has practiced law for over 18 years and the only disciplinary matter on his record occurred nearly 13 years ago. Respondent also recognized the need for continuing medical-psychological treatment.

The Director conceded at oral argument that but for respondent's failure to cooperate, indefinite suspension may not be an appropriate sanction for the other instances of misconduct in this case. While in the past it is true that we have used suspension as a sanction for trust account violations or non-cooperation, those acts of misconduct have generally been accompanied by other aggravating factors. For example, in *In re Engel,* 538 N.W.2d 906, 906–07 (Minn.1995), the attorney had a prior disciplinary history and, during the course of the investigation into allegations of client neglect, was suspended for non-payment of her attorney registration fee. We imposed indefinite suspension not only because the attorney failed to cooperate during the investigation, but also because she demonstrated disregard for her professional obligations and an inability to handle the consequences of her actions. *Id.* at 907. Another case warranting suspension involved not only trust account violations but also charges of improperly filing attorney liens on homesteads and allegations of charging illegal fees in workers' compensation cases. *In re Beal,* 374 N.W.2d 715, 717 (Minn.1985). In yet another case involving multiple acts of misconduct, including failure to hold client funds in trust, commingling of client funds, failure to maintain proper books and records, and failure to promptly disburse settlement proceeds, we determined that a five-year suspension should be conditionally stayed, where mitigating factors were present. *In re Isaacs,* 406 N.W.2d 526, 527 (Minn. 1987). Accordingly, the particular sanction imposed depends on the specific facts of the case. *In re Heffernan,* 351 N.W.2d 13, 14 (Minn.1984).

 Based on the specific facts of this case, the Director admitted that respondent would be able to apply for reinstatement immediately after suspension. Prior

to reinstatement after suspension, we would normally require respondent to establish that he would not be a threat to the public by demonstrating his fitness to practice law, show his commitment to comply with his ethical duties, present evidence that his medical condition is improving and show that he is following the advice of approved medical professionals. These objectives could also be immediately met by inserting additional measures of protection through a conditional probation of respondent, without the attendant dislocation that would result to respondent and his existing clients from having to close down his practice, with a right to reopen it in the near future upon reinstatement. Accordingly, in keeping with the principle that attorney discipline is not to punish the attorney but to protect the public, the courts, and the profession and in light of the specific facts presented here, we conclude that indefinite suspension is not necessary to fulfill the purposes of attorney discipline.

IT IS HEREBY ORDERED:

That respondent Richard T. Jellinger is publicly reprimanded and placed on probation for a period of two years pursuant to RLPR 15(a)(4) and subject to the following conditions:

1. Respondent must abide by the Minnesota Rules of Professional Conduct.

2. Respondent must nominate an attorney who agrees to monitor his compliance with the terms of his probation. If respondent does not obtain a supervisor acceptable to the Director, the Director may appoint a licensed Minnesota lawyer to supervise his probation. Respondent must fully cooperate with his supervisor's oversight of his probation.

3. Respondent must demonstrate to the Director that he has adopted office procedures to ensure compliance with the applicable rules and precedent regarding the handling of client funds and maintenance of a trust account.

4. The Director shall develop recommendations for supervision of respondent's trust account to ensure review of the activity in the trust account on a regular basis by an independent party. Respondent must comply with the Director's instructions and inquiries regarding the monitoring of the trust account.

5. Respondent must demonstrate to the Director that he has adopted office procedures to facilitate timely review and completion of legal matters on behalf of respondent's clients.

6. Respondent may not accept any new client matters for 60 days from the date of this order and must diligently work to ensure client matters are resolved in a timely manner.

7. Respondent must provide his supervisor a monthly inventory and status report of all open files by the 10th day of each month. Respondent must provide his supervisor with a monthly report of his billing and collection activities.

8. Respondent must seek medical treatment from a mental health professional or medical professionals approved by the Director and abide by the course of treatment recommended. Respondent must complete the necessary authorizations for release of medical information to ensure that information regarding respondent's health status is shared with the Director on a regular basis.

9. Respondent must cooperate with the Director's office in its efforts to monitor his compliance with this probation. Respondent shall comply with the Director's requests for information and documentation promptly, truthfully and completely. Respondent must provide authorization for release of information and documentation

at the Director's request to verify compliance with the terms of the probation.

10. Respondent must cooperate with the Director's investigation of any further allegations of professional misconduct, which may come to the Director's attention.

11. Failure to abide by the conditions of probation will result in more severe sanctions, including the possibility of an immediate temporary suspension pending a full evidentiary hearing on any alleged violations of probation or further violations of the Rules of Professional Conduct.

12. Respondent must pay to the Office of Lawyers Professional Responsibility $900 in costs and disbursements as required by Rule 24, RLPR.

STRINGER, Justice (dissenting).

### DISSENT

I respectfully dissent. It is undisputed that when respondent's bank closed his office business account in December of 1999 because of chronic overdrafts, he ran his business accounts through his trust account, at times commingling business account funds with trust account funds. But one feature remained unchanged—he was still chronically overdrawn, but now as to trust account assets. When the Director's office was notified, efforts to get information about these overdrafts were all but ignored—respondent admitted he didn't even open the Director's frequent mailings. Perhaps nothing more pointedly underscores respondent's reckless and irresponsible conduct, however, than when his certification of trust account compliance accompanied his attorney registration fee that was paid by a check drawn *on his trust account.*

After hearing nothing from respondent for almost a year, despite the Director's frequent efforts to investigate his trust account overdrafts, respondent appeared at oral argument to explain how depression and other matters had led him down a path of irresponsible neglect of his practice and his professional responsibilities. His description was a heart-rending account of all that can go wrong when an attorney fails to conduct his practice within the rules prescribed for all practitioners, but the only facts that we may consider are those admitted on November 28, 2000 and our only task is to determine the appropriate sanction.

Respondent's serious and admitted disciplinary rule violations overwhelmingly demonstrate his lack of fitness to practice law and he should be suspended from the practice of law. The Director received eleven overdraft notices in the months the Director attempted to investigate, warn and assist respondent regarding his misconduct. Although respondent initially appeared willing to cooperate, his subsequent utter lack of response and the continued overdrafts revealed an intent to continue misusing the trust account despite the Director's insistence that he stop doing so. Respondent's failure to respond has left this court with no evidence of mitigating circumstances or indication that he is willing or able to change his behavior to conform with the Rules of Professional Conduct. Thus, respondent's trust account violations are compounded by his failure to cooperate with the Director or heed warnings to stop using the trust account for operating funds.

The majority's ruling is clearly out of step with numerous decisions of this court suspending attorneys for trust account violations. "Misappropriation of client funds reflects adversely on an attorney's fitness to practice law and warrants serious sanctions, unless substantial mitigating circumstances exist." *In re Isaacs,* 451 N.W.2d 209, 211 (Minn.1990). Further, respon-

dent has demonstrated a complete unwillingness to cooperate, which we have clearly stated carries its own sanctions. *See In re Engel*, 538 N.W.2d 906, 906–07 (Minn. 1995) (imposing indefinite suspension); *see also In re Cartwright*, 282 N.W.2d 548, 551–52 (Minn.1979) (imposing six-month suspension).

In *In re Beal*, we ordered a three-month suspension and a year of probation for trust account violations where an attorney fully cooperated with the Director and hired an accountant to implement proper bookkeeping procedures. 374 N.W.2d 715, 716–19 (Minn.1985) (sanctioning attorney who had commingled personal and client funds, filed improper attorney liens, charged illegal fees, failed to keep the required books and records and falsely certified that he was in compliance with trust account requirements). The sanction in *Beal* was light because the attorney was relatively inexperienced and the misconduct resulted from the attorney's failure to understand and implement basic record keeping and business procedures rather than fraudulent intent. *Id.* at 719.

We were similarly lenient where an attorney presented evidence that he had changed his bookkeeping system to ensure that the misconduct would not recur, the misconduct was partially caused by disruption in his professional life stemming from the misconduct of others who were no longer part of his practice, and alcoholism was a mitigating factor. *In re Isaacs*, 406 N.W.2d 526 (Minn.1987) (ordering public reprimand and stayed five-year suspension where attorney failed to hold client funds in trust, negligently misappropriated client funds, failed to maintain proper books and records, falsely certified compliance with trust account procedures and failed to promptly disburse settlement proceeds).

The circumstances in this case demonstrate a much greater risk to the public than those in *Beal* and *Isaacs* because respondent has failed to cooperate with the Director or provide evidence that his misconduct will not recur. As the Director explained to the court, a supervising attorney has only a limited ability to monitor the daily activities of an attorney on probation, and "probation does not work where the lawyer does not cooperate." The many examples of refusal to cooperate in this case indicate that probation is particularly unlikely to be effective in curbing respondent's misconduct.

Further, unlike the attorney in *Isaacs*, respondent has failed to provide any evidence of mitigating circumstances. Respondent's last-minute assertions that he suffers from depression and is undergoing treatment cannot be a part of our consideration as they were without any evidentiary support whatsoever. To show that psychological disability is a mitigating factor, the attorney must prove by clear and convincing evidence that the psychological problem is severe, that the problem was the cause of the misconduct, that the attorney is undergoing treatment and is making progress to recover from the psychological problem, that the recovery has arrested the misconduct, and that the misconduct is not likely to recur. *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn.1983). Such a showing requires evidence going to each factor. *See In re Hanvik*, 609 N.W.2d 235, 240–41 (Minn.2000) (holding respondent did not establish depression was a mitigating factor where the diagnosis was moderate rather than severe and imposing indefinite suspension with leave to apply for reinstatement after two years for misappropriation of client funds and misrepresentations to the Director). No evidence going to any of these factors was presented here—indeed respondent was even unclear as to whether he suffered from a psychological disability.

Public reprimand and two years of probation was ordered where, as here, an attorney committed trust account violations and neglected client matters during a period of claimed emotional distress. *In re Fling*, 316 N.W.2d 556, 557–58 (Minn. 1982). The trust account violations in *Fling* were less troubling than the ones here, however, as the attorney in *Fling* deposited all client funds in a trust account, did not commingle client funds with personal or firm funds, and did not convert client funds for his own use. *Id.* In contrast, respondent failed to put client funds in trust, misappropriated client funds to pay a third party and commingled client funds with operating funds. Further, there was evidentiary support in *Fling* for the attorney's assertions that his misconduct was related to the distraction created by the aftermath of a crime committed against one of his children. *Id.* The temporary nature of the emotional distress in conjunction with the family problems in *Fling* provided assurance that the misconduct was temporary. Respondent has provided no such evidence. Therefore, indefinite suspension is the only sanction appropriate to protect the public from conduct respondent admitted at oral argument was beyond his control.

Demonstrated compliance with the trust account requirements in the conduct of the attorney's practice and proven acceptance of his responsibility to cooperate fully with the Director in identifying and correcting misconduct is the only basis upon which this court might order probation without suspension when faced with serious trust account violations such as those before us here. Respondent appeared at oral argument and stated that he feels remorseful, has improved his business practices,[1] and

will not misuse his trust account again. There has been no fact finding on his argument before the court, however. Respondent had every opportunity to cooperate with the Director and present evidence on his own behalf but he did not do so. Suspension would appropriately put the burden on respondent to demonstrate his fitness to practice law and the diminished risk to the public. Further, as respondent has not cooperated and has demonstrated no interest in correcting his misconduct other than his appearance at oral argument, it is all the more important that he be put to the test of demonstrating he is trustworthy and that he no longer poses a risk to the public through the process of reapplication following suspension.

The majority's striking departure from long established precedent in discipline imposed for trust account violations is based on what it terms unique about the circumstances here. But the only unique feature of this matter is the level of disdain with which a practicing lawyer may treat his professional responsibility in managing his trust account, his duty to cooperate with the Director and his duty to attend to his clients' affairs. Under the facts of this case, suspension is necessary to fulfill the duty of this court to protect the public, the legal profession, and the administration of justice.

RUSSELL A. ANDERSON, Justice (dissenting).

I join in the dissent of Justice Stringer.

LANCASTER, Justice (dissenting).

I join in the dissent of Justice Stringer.

1. Respondent advised the court that now he has no business or trust account and all transactions are in cash.