In re Petition for Disciplinary Action Against Eli C. LEVENSTEIN, an Attorney at Law of the State of Minnesota.

No. C8–87–2327.

Supreme Court of Minnesota.

April 21, 1989.

William J. Wernz, Director of the Office of Lawyers Professional Responsibility, Thomas C. Vasaly, First Asst. Director, St. Paul, for appellant.

Eli C. Levenstein, Minneapolis, pro se.

PER CURIAM.

In this attorney discipline action, the original petition of the Director of the Minnesota Lawyers Professional Responsibility Board (Director) as well as a supplemental petition alleged that respondent Eli C. Levenstein had neglected a number of client matters, failed to cooperate with the disciplinary investigation, and had practiced law while his attorney's license was suspended for nonpayment of registration fees. The referee appointed by this court, after a formal hearing, made findings of fact and recommended that appropriate discipline would be indefinite suspension from the practice of law for a minimum of six months. He further recommended that thereafter reinstatement be conditioned upon proof that respondent had complied with Rule 18 of the Rules on Lawyers Professional Responsibility;[1] had provided

---

1. Rule 18, Minnesota Rules on Lawyers Professional Responsibility (RLPR) reads:

    **(a) Petition for Reinstatement.** A suspended, disbarred, or resigned lawyer's petition for reinstatement to practice law shall be served upon the Director and the President of the State Bar Association. The original petition, with proof of service, and seven copies, shall then be filed with this Court.

    **(b) Investigation; Report.** The Director shall investigate and report the Director's conclusions to a Panel.

for a plan for restitution of financial losses sustained by clients; and had furnished to this court psychological and/or medical data indicating freedom from any health or psychological problems that would prevent respondent from practicing law in a competent and diligent manner. After the referee's findings and recommendations had been filed, but before oral argument in this court, the Director served a second supplementary petition in which he alleged that respondent had neglected other client's affairs, persisted in noncooperation, and continued to practice while under suspension for nonpayment of license fees. Because respondent failed to timely serve and file an answer to the supplemental petition, the allegations of misconduct therein are deemed admitted. Rule 13(b), RLPR. The Director suggests that the emergence of these additional instances of misconduct warrants more severe sanctions, and, accordingly, that appropriate discipline should include a minimum suspension of at least three years.

Since his admission to the bar in 1983, respondent Eli Levenstein has engaged in the sole practice of law. Notwithstanding that this practice has been of relatively short duration, there have surfaced numerous complaints of client neglect, some of which had their inception shortly after respondent's admission to the bar.

(1) In 1984 a client retained respondent to act as trustee of a family trust to prudently seek advantageous investments of the trust's funds. Although the funds were placed initially in an interest bearing account, respondent failed to follow through on his promise to investigate the possibility of more advantageous investment possibilities. Not only did respondent fail to keep his client advised, but additionally failed to respond to numerous attempts by the client to communicate concerning trust matters. As trustee, he failed to timely file state or federal tax returns or advise beneficiaries of trust income personally taxable to them. Eventually, the client retained another attorney to handle the legal matters relevant to the trust administration. Although respondent had agreed to provide a trust accounting, he failed to do so even after the substitute attorney initiated a number of requests for it. Eventually, following a formal motion, the Hennepin County Court ordered respondent to furnish the accounting. Even so, respondent continued to delay the final accounting. By the time it was finally made, seven months after first requested, the trust had been compelled to incur additional and unnecessary attorney fees in the amount of $1,098.

Also in 1984, a client retained respondent to collect moneys due the client from the sale of a house ancillary to a prior dissolution action order. Respondent did enter a $24,000 judgment, but collected only a few hundred dollars, almost half of which he retained for fees and expenses. Thereafter he failed to initiate further collection efforts. Again he neglected to return client calls. Not only did he fail to return his client's calls requesting return of her file, but he failed to respond to letter inquiries

**(c) Recommendation.** The Panel may conduct a hearing and shall make its recommendation. The recommendation shall be served upon the petitioner and filed with this Court.

**(d) Hearing Before the Court.** There shall be a hearing before this Court on the petition unless otherwise ordered by this Court. This Court may appoint a referee. If a referee is appointed, the same procedure shall be followed as under Rule 14.

**(e) General Requirements for Reinstatement.** Unless such examination is specifically waived by this Court, no lawyer ordered reinstated to the practice of law after having been disbarred by this Court shall be effectively reinstated until the lawyer shall have successfully completed such written examinations as may be required of applicants for admission to the practice of law by the State Board of Law Examiners, and no lawyer ordered reinstated to the practice of law after having been suspended by this Court shall be effectively reinstated until the lawyer shall have successfully completed such written examination as may be required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility. Unless specifically waived by this Court, no lawyer shall be reinstated to the practice of law following the lawyer's suspension or disbarment by this Court until the lawyer shall have satisfied the requirements imposed under the rules for Continuing Legal Education on members of the bar as a condition to a change from a restricted to an active status.

from the client's second attorney requesting the file and completion of a substitution of attorney form. Not only did those letters remain unanswered, but 10 telephone calls were likewise not returned. The file was not returned until November 1987. When the client's substitute attorney finally received the file, $20,000 was collected for the client after approximately twelve hours' work.

In late 1986, respondent undertook representation of a wife in a dissolution action. The family court ordered the husband to pay $350 in child support and permitted wage withholding for noncompliance. Although aware of his client's dire financial need, the fact her ex-husband had employment, and notwithstanding repeated client requests, respondent took no action to obtain unpaid support for him.

Levenstein was retained in 1986 by a client to represent him on a discrimination claim that had already been commenced by the client *pro se* in federal district court. Before retaining respondent, the client had been ordered by the magistrate to amend his complaint. Respondent was paid a $1,000 retainer fee. Although he filed a notice of appearance in federal district court, he failed to amend the complaint as had been required by the magistrate's order, and took no further action to pursue the claim. As the result of that failure, the federal district court dismissed the complaint with prejudice in July, 1987. Respondent did return $600 of the retainer fee to his client.

In February 1986 respondent was paid a retainer fee of $300 to represent a client in a paternity action. He requested that the initial hearing, scheduled for February, be postponed to June. He appeared at the June hearing but without his client. At the hearing, the court ordered the client submit to blood testing and directed respondent to serve the order on the client. He did not do so, nor, in fact, did he communicate with the client about the matter for five months. The court ordered respondent to appear with his client, at a hearing on December 8, 1986. Respondent appeared, but contrary to the court's order, without the client.

The court on that occasion ordered the client to pay temporary child support, and to provide answers to interrogatories previously served. However, respondent failed to inform the client during a phone conversation the very next day of either the hearing or the order. Ultimately the client's wages were garnisheed. As in the other matters, respondent never returned the client's calls relative to the status of the matter.

In another dissolution case, a disputed issue was custody of the parties' children. Originally respondent's client had been awarded temporary custody, but financial pressures compelled her to move from the homestead, following which custody was transferred to the client's husband. Although the client advanced money to respondent to seek review of the transfer decision, respondent without either the knowledge or consent of his client, cancelled the scheduled review hearing. Thereafter, respondent encouraged his client to acquire her own apartment in the hope of improving her chances of regaining custody. She complied, at considerable financial sacrifice. Respondent promised the client he would schedule a new custody hearing, but he neither did so nor did he return her calls relative to the matter. The delay and time lapse caused by respondent's inaction greatly diminished his client's prospects of regaining custody of the children.

Also, in 1986 respondent failed to institute appropriate actions as directed by his client to process a death by wrongful act claim. When the client tried to contact him, she was unsuccessful, and it was almost two years before respondent returned the client's file to her.

Compounding these several instances of neglect, procrastination, and inaction was respondent's noncooperation with the disciplinary investigation following client initiated complaints. He failed to respond to requests for information from the Hennepin County Ethics Committee, failed to appear at an October 1987 meeting requested by the Director's office, and likewise ig-

nored and failed to respond to other information requests made by the Director.

Between July 1987 and December 9, 1987, the respondent was under automatic suspension from the practice of law for nonpayment of attorney registration license fees. Nonetheless, he continued practicing law while suspended.

■ The referee found the repeated neglect of client matters by respondent violated Rules 1.3 and 1.4 of the Minnesota Rules of Professional Conduct (MRPC) (lawyer shall act diligently and keep client reasonably informed). He also found respondent's conduct of failing to respond to client requests to turn over information violated Rules 1.15(b)(3), 1.15(b)(4) and 1.16(d) of the MRPC (lawyer shall promptly deliver to client properties client entitled to receive). Respondent's conduct with respect to the noncooperation counts was found to violate Rule 8.1(a)(3) of the MRPC and Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR). Engaging in the practice of law while suspended for nonpayment of license fees was found to violate Rules 1.4, 1.16, 5.5(a) and 8.4(d) of the MRPC and Rule 26 of the RLPR. We hold the findings are clearly supported by the record, and sustain the referee's conclusions.

The referee, of course, in making his disciplinary recommendation did not have before him the facts arising from the second supplemental petition served and filed while this matter was pending in this court. Without being aware of the allegations of the second supplementary petition, the referee made the recommendation summarized in the first paragraph of this opinion. As there indicated, the Director, in the light of the additional misconduct, urges a more onerous sanction.

The second supplementary petition charges that respondent practiced law while on restricted status for failure to comply with CLE requirements and while again suspended for nonpayment of the attorney license registration fees. It also charges respondent with failure to properly represent two separate clients in dissolution matters and, as with the other instances of client neglect, with procrastination, and failure to respond to client's requests for information concerning their matters as well as, in one case, for accepting a small retainer but taking no action on the client's matter. Finally, respondent continued his lack of cooperation with the Director's investigation of these later emerging client complaints. The consequence of respondent's failure to answer the second supplemental petition is that those charges are likewise considered to be established pursuant to Rule 13(b), RLPR.

■ We impose discipline for attorney misconduct primarily for the purpose of public protection and deterrence of similar conduct. *In re Jensen*, 418 N.W.2d 721, 722 (Minn.1988). We weigh the nature of the misconduct, the cumulative weight of the disciplinary violations, the harm to the public, and the damage to the profession and the judicial system in seeking the appropriate discipline. *In re Schaefer*, 423 N.W.2d 680, 683 (Minn.1988).

Cases involving continued or repeated neglect of client matters have traditionally warranted severe sanctions. Absent mitigating circumstances, typically we have ordered indefinite suspension. *See Schaefer*, 423 N.W.2d 680, (neglect of five matters involving three clients, six months' indefinite suspension); *In re Flanery*, 431 N.W.2d 115 (Minn.1988) (neglect of ten matters involving seven clients, indefinite suspension for five years). When shorter suspension followed by automatic reinstatement has been ordered, usually the attorney has taken positive steps to address the problems bringing him or her before this Court. *See, e.g., In re Mitchell*, 368 N.W.2d 273 (Minn.1985); *In re Hartke*, 407 N.W.2d 671 (Minn.1987).

Even though this is Levenstein's first appearance before the court in a disciplinary matter, the neglect of client matters commenced shortly after his admission to the bar and the complaints began to surface within three years. *See Flanery*, 431 N.W.2d at 119, (neglect began two years after bar admission). Respondent's conduct involves neglect of the legal affairs of eight different clients, and, as evidenced by

the supplemental petition, his inattention to legal requirements appears to be continuing. Nothing in the record reveals any acknowledgment by him of unprofessional conduct, nor that he has instituted any procedures to address the behavior that brings him before us. Indeed, his continued conduct following the initiation of these proceedings indicates just the opposite. In most instances his clients having complaints sustained little or no financial loss. For some, the "injury" was a delay in getting work accomplished, messages returned, or files returned. For others however, the injury was more severe. The beneficiaries of the trust incurred expenses of at least $1,000 in removing Levenstein as trustee and rectifying tax records. One client's opportunity to regain custody of her children was severely prejudiced by Levenstein's delay and inaction. Another client's wages were garnisheed due to Levenstein's failure to inform him of scheduled court hearings and court orders. All of the clients experienced frustration with Levenstein's lack of communication.

In addition to the misconduct involving clients, Levenstein's disciplinary problems include three separate counts of noncooperation with the attorney discipline process. In the past, we have considered suspension appropriate when an attorney fails in this respect because noncooperation is, by itself, considered misconduct. *See In re Cartwright*, 282 N.W.2d 548 (Minn.1979). Finally, Levenstein also faces counts of practicing law while suspended or on restricted status. The cumulative weight of these transgressions of rules of professional conduct warrants severe discipline. The similar pattern of neglect and the number of affected clients who have sustained financial and other, perhaps more serious, losses, clearly documents the type of conduct that is damaging to the public, the profession, and the administration of justice itself. Not even a scintilla of evidence in the record suggests any mitigating factors.

Though we traditionally afford the referee's recommendation respecting appropriate discipline great deference, the final responsibility to impose discipline rests with the court. *In re Pyles*, 421 N.W.2d 321, 325 (Minn.1988).

In this case when the referee made his disciplinary recommendation, he was unaware of the pending, but similar client complaints which later came to light and were addressed in the second supplemental petition. When we add those admitted matters which seem to further confirm a sustained pattern of professional incompetency, we conclude that a longer minimum suspension is required for the protection of the public, in order to ensure ourselves that respondent has taken appropriate steps to recognize, address, and cope with those problems which have led to this suspension. Accordingly, effective immediately, respondent is indefinitely suspended from the practice of law. He may not petition for reinstatement before one year from this date, and then only if he has fulfilled the requirements of Rule 18, Rules on Lawyers Professional Responsibility. In addition, before we will consider reinstatement, respondent must present us with a plan designed to recompense to clients who sustained financial loss due to respondent's neglect,[2] and, as well, provide adequate psychological or other medical evidence establishing that he has no physical or psychological problems that would prevent him from practicing law competently, diligently, and within the rules of conduct for attorneys at law. Finally, respondent shall pay $750 costs as per Rule 24(a), RLPR.

---

2. The total amount of restitution is $1,968. It is due client PL in the amount of $1,098; due client RW in amount of $200; client CG in the amount of $500; and client BG in the amount of $170.