In re Petition for DISCIPLINARY ACTION AGAINST Scott E. SELMER, an Attorney at Law of the State of Minnesota.

No. C8–93–1638.

Supreme Court of Minnesota.

April 14, 1995.

Marcia A. Johnson, Director, Lawyers Professional Responsibility Bd., Patrick R. Burns, Sr. Asst. Director, St. Paul, for appellant.

Jack S. Nordby, Meshbesher & Spence, Ltd., Minneapolis, for respondent.

Heard, considered and decided by the court en banc.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action with this court alleging that respondent Scott E. Selmer had committed professional misconduct warranting public discipline. A referee found that Scott E. Selmer, an attorney licensed in the State of Minnesota since 1984, had violated the Minnesota Rules of Professional Conduct by failing to promptly provide an accounting (Minn.R.Prof.Conduct 1.4, 1.5(c) and 1.15(b) (1985)); by charging and suing to collect an unreasonable fee and by abusing the discovery process in litigation against his client (Minn.R.Prof.Conduct 1.5(a), 3.1, 3.4(d), 4.4, 5.1(c)(1), 8.4(a) and 8.4(d)); and by failing to maintain proper trust account books and records, by falsely certifying that he had, and by

commingling personal and client funds in his trust accounts (Minn.R.Prof.Conduct 1.15(a), (d), (g), and 8.4(c) and Lawyers Professional Responsibility Board Amended Opinion No. 9). The referee recommended a private reprimand and two years probation.

The Director did not agree and argued that Selmer should be publicly reprimanded, arguing that a private reprimand is not the appropriate sanction for the above described violations of the Minnesota Rules of Professional Conduct. We agree.

Scott E. Selmer was retained by Ruth Reckin to represent her in a personal injury action. Reckin and Selmer had a contingent fee agreement by which Selmer would receive 33⅓ percent of all amounts recovered at or before trial, or 45 percent of all amounts recovered in the event an appeal was necessary in order to prevail.

In July 1986, Selmer commenced an underinsured motorist action against Milwaukee Mutual Insurance Co. on behalf of Reckin. Milwaukee Mutual, through counsel, notified Selmer that it would be seeking declaratory judgment that no coverage was available. On March 1, 1989, Reckin was served a declaratory judgment summons and complaint by Milwaukee Mutual. Reckin attempted to reach Selmer but was unsuccessful because he had resigned from his former law firm and had not informed her of the change. No answer to the declaratory judgment complaint was filed.

On March 29, 1989, Milwaukee Mutual filed for a default judgment, serving both Reckin and Selmer. The default judgment motion was scheduled for a hearing on April 7, 1989, in Ellsworth, Wisconsin. Selmer learned of the motion for default judgment several days before the hearing, and requested a delay in the hearing. When his request was denied, Selmer began to prepare responsive pleadings. He was delayed on the way to Ellsworth and, although he had informed the court of the delay, the hearing was held before he got there and Milwaukee Mutual was awarded a default judgment. Selmer appealed to the Wisconsin Court of Appeals on June 1, 1989.[1] Selmer later filed a motion

1. On August 20, 1990, respondent received a private reprimand from the Board of Attorneys

to vacate the default judgment which the trial court granted on September 15, 1989. Selmer then dismissed the appeal to the Wisconsin Court of Appeals.

Reckin and Milwaukee Mutual entered into arbitration and $10,000 was awarded to Reckin. On October 7, 1990, Selmer informed Reckin that the check from Milwaukee Mutual had arrived. Reckin requested Selmer to send the check to her mother's house because she was moving to Seattle, Washington the next day. Selmer did not do so. An exchange of correspondence ensued between Selmer and Reckin as to how the proceeds of the arbitration should be distributed. On November 5, 1990, Reckin wrote to Selmer requesting an accounting.

On November 15, 1990, Selmer filed the first of three lawsuits against Reckin for the collection of fees and costs owing him. On January 23, 1991, the trial court dismissed this first complaint, noting that Selmer should have made a demand upon Reckin for payment prior to instigating the suit. Selmer commenced a small claims court action, seeking to recover the costs of collection, and subsequently filed another' action against Reckin for the attorney's fees.

These several lawsuits included claims for fees and expenses in varying amounts. The November 1990 claim sought a judgment of $4500, the amount which would have been due if the settlement had been obtained after an appeal. In later correspondence with Reckin's attorney, Selmer claimed fees of $4500 plus $5398.02 in expenses, for a total of $9898.02. In the second district court action, Selmer claimed $10,203.04.

On March 20, 1991, Reckin's attorney served Selmer with interrogatories and a request for production of documents. Selmer made no response to the discovery requests, despite frequent contacts by Reckin's counsel. One day before a hearing on a motion to compel discovery, Selmer respond-

ed, some four months after the original discovery requests. At about the same time Selmer's counsel scheduled a deposition of Reckin. After attempting to negotiate with Selmer's attorney, Reckin's attorney brought a motion for a protective order and sanctions, which was granted.

On November 4, 1991, Respondent and Reckin entered into a fee arbitration. On April 8, 1992, the arbitrators awarded $3,338.40 to Reckin and $6,661.60 to Selmer.

In August 1991, Reckin filed an ethics complaint with the Director's Office against Selmer. In the course of investigating the claim, the Director's office discovered certain problems with Selmer's trust accounts. Selmer had not maintained proper trust accounts, had commingled private and trust accounts, and the bank in which Selmer had maintained one of his trust accounts had failed to pay interest to the Lawyers Trust Account Board ("IOLTA"). Further, Selmer improperly kept $1,195.35 in fees due him in the trust account, and issued four trust account checks payable to his employee, totaling $1,550.59. Selmer used the fees and accrued IOLTA interest to cover the checks.

Selmer argues that no violations of the rules were proved by clear and convincing evidence, that the fee arbitration involving the same dispute forecloses the disciplinary proceeding and that any attorney discipline imposed is unwarranted in light of the "minor, technical and inadvertent errors."

■ We consider first Selmer's argument that the evidence offered is insufficient to support the referee's findings of violation. We have consistently taken the position that in an attorney discipline matter the referee's findings will not be set aside unless clearly erroneous. *In re Ruffenach,* 486 N.W.2d 387, 389 (Minn.1992). In this matter, we find no basis for concluding that the referee's

Professional Responsibility of the Supreme Court of Wisconsin for incompetently filing the appeal. On the notice of appeal filed with the appellate court, the top of the notice stated, "United States District Court for the Third District of Wisconsin" when no such court exists. Additionally, the body of the notice stated, "Plaintiff above named hereby appeals to the United States Court of

Appeals for the Third Circuit" when in fact the appeal was being filed in the Wisconsin Court of Appeals. Respondent accepted the private reprimand. Further, respondent filed the notice of appeal in Wisconsin when his license to practice in Wisconsin had been suspended as of May 15, 1989, for noncompliance with the continuing legal education requirements.

findings were erroneous; the record is clearly sufficient to support them.

Secondly, while it is true that the dispute as to the disposition of the $10,000 settlement has been fully resolved by the fee arbitration process, fee arbitration has never been an alternative to attorney discipline where the allegations of misconduct go to issues beyond the details of the fee. At the heart of this disciplinary matter is Selmer's misuse of the litigation process to harass his client; this is not a matter which could be settled in fee arbitration.

■ Finally, we turn to the question of the appropriate discipline. While a referee's recommendation for discipline has traditionally been afforded great weight, this court alone has the final responsibility to determine the appropriate discipline. *In re Perry*, 494 N.W.2d 290, 293 (Minn.1992).

■ In determining the appropriate discipline, the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the harm to the public, and the harm to the legal profession must be weighed. *Matter of Beal*, 374 N.W.2d 715, 719 (Minn.1985). Although disciplinary cases stand on their own facts, prior cases are helpful by way of analogy. *In re Isaacs*, 451 N.W.2d 209, 211 (Minn.1990). The discipline to be imposed depends on the specific facts of the misconduct, together with mitigating circumstances. *In re Heffernan*, 351 N.W.2d 13, 14 (Minn.1984).

■ This case presents an unusual issue in that we are being asked to discipline an attorney/client for certain discovery violations of his attorney. While it is true that in the normal course a client will not be held liable for the acts of his attorney, we have said that the Code of Professional Responsibility requires an attorney to comply with applicable disciplinary rules at all times, regardless of whether he is acting in a professional capacity. *In Matter of Peters*, 428 N.W.2d 375, 381–82 (Minn.1988). Therefore, we hold that, under certain circumstances, attorneys who are also clients may be disciplined for rule violations for actions of their attorneys, where the actions of the attorney/client are closely intertwined with those

of the attorney. This is just such a case. Here, Selmer was appearing *pro se* at the time the interrogatories were served and continued to do so until the time of the second district court action. Further, given the particular responsibility of a client in matters of discovery, we think it reasonable to attribute the discovery violations in the second district court action to Selmer, particularly because Selmer testified that he had been working closely with his attorney and was aware of the handling of the litigation. In particular, we believe that this pattern of conduct falls within the broad meaning of Minn.R.Prof.Conduct 8.4, which defines professional misconduct to include "knowingly assist[ing] or induc[ing] another to [violate the rules.]"

Further, Selmer's misconduct is not related to a single isolated incident. Rather, it is the accumulation of numerous violations of the Minnesota Rules of Professional Conduct, the cumulative weight of which compels public reprimand. *In re Jones*, 383 N.W.2d 303, 307 (Minn.1986). This result is in accordance with similar situations in the past. In *Beal*, this court suspended an attorney from the practice of law for three months with reinstatement to be conditioned upon proof that the attorney had provided a complete and accurate written accounting to his client. *Beal*, 374 N.W.2d at 719. This court held that the failure to account properly for a trust fund is serious misconduct stating:

> The maintenance of proper trust account records is vital to the practice of the legal profession, since it serves to protect the client and avoid even the appearance of professional impropriety.

*Id.* at 715, 716.

Likewise in *Isaacs*, an attorney was suspended for five years for misappropriating client funds from his trust account, for failure to maintain proper trust account records, neglect of client matters, failure to return a client file, and failure to adequately communicate with his client. *In re Isaacs*, 406 N.W.2d 526 (Minn.1987) ("Isaacs I"). Three years later, the attorney in *Isaacs I* was disbarred for continuing to engage in the same type of misconduct. *In re Isaacs*, 451 N.W.2d 209, 212 (Minn.1990). In *Tieso*, an

attorney was indefinitely suspended for filing a frivolous, vexatious lawsuit against his ex-wife and her husband. *In re Tieso*, 396 N.W.2d 32, 34 (Minn.1986). In cases where attorneys have charged excessive fees, the discipline has ranged from a public reprimand to disbarment depending on the egregiousness of the conduct. *In re Simmonds*, 415 N.W.2d 673, 677 (Minn.1987).

In *In re Brooks*, 494 N.W.2d 876 (Minn. 1993), a public reprimand with two years unsupervised probation was imposed on an attorney who failed to maintain proper client files and trust account books and records on her attorney registration form. In *In re Haefele*, 508 N.W.2d 780, 781 (Minn.1993), an attorney was publicly reprimanded with two years probation for similar trust account violations. Additionally, in *In re Kludt*, 467 N.W.2d 606, 607 (Minn.1991), an attorney was issued a public reprimand and two years supervised probation for commingling of funds, failure to keep adequate trust account books and records, failure to remit interest to the Lawyers Trust Account Board, and falsely certifying to this court that he properly maintained his trust account books and records.

This court having considered all the relevant facts and circumstances surrounding this matter does NOW ORDER:

1. that respondent Scott E. Selmer is hereby publicly reprimanded; and

2. that respondent be placed on probation in accordance with the referee's order for a two year period. The terms of the probation should include the following:

    a. Respondent shall abide by the Minnesota Rules of Professional Conduct. Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct which may come to the Director's attention.

    b. Respondent shall maintain books and records concerning law office income and expenses and funds held on behalf of clients in compliance with Minn.R.Prof.Conduct 1.15 and Lawyers Professional Responsibility Board Amended Opinion No. 9. Such books and records shall also be made available to the Director upon request. Respondent shall provide copies of all required monthly reconciliations and trial balances to the Director's Office.

    c. Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation and promptly respond to the Director's correspondence by the due date. Upon the Director's request, respondent shall provide authorization for release of information and documentation to verify compliance with the terms of the probation.

    d. Pursuant to Rule 24, Rules on Lawyers Professional Responsibility, respondent shall pay to the Director costs of $750 together with all disbursements necessarily incurred after the filing of the petition for disciplinary action.