In re Petition for DISCIPLINARY ACTION AGAINST Carol Sue MERLIN, an Attorney at Law of the State of Minnesota.

No. C4–96–1201.

Supreme Court of Minnesota.

Jan. 28, 1998.

Martin A. Cole, Acting Director, Craig D. Klawsing, Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, for Appellant.

Carol Sue Merlin, Richfield, pro se.

1. Rule 3, Rules of the Supreme Court for Registration of Attorneys, provides:

   Upon failure to pay such fee, the right to practice law in this state shall be automatically suspended, and no individual shall be authorized to practice law in this state or to in any manner hold himself out as qualified or authorized to practice law while in default in the payment of such registration fee.

2. The trustee filed a report on July 24, 1997 stating that 67 files had been obtained from Merlin's former office; 48 files were returned to clients and 19 files remain in the possession of

## OPINION

PER CURIAM.

■ The director of the Lawyers Board on Professional Responsibility petitioned this court to take disciplinary action against Carol Sue Merlin for neglect of client matters, unauthorized practice of law, failure to file income taxes, and noncooperation with the director's office. Merlin was admitted to practice law in Minnesota in 1981 and practiced almost exclusively in the area of immigration law. Merlin failed to pay her 1994–95 attorney registration fee when due on September 30, 1994, and she was suspended from the practice of law under Rule 3, Rules of the Supreme Court for Registration of Attorneys, until the dues were paid on December 5, 1994.[1] On October 1, 1995, Merlin was again suspended from the practice of law for failure to pay her attorney registration fee.

This court appointed the director of the Lawyers Board of Professional Responsibility trustee for Merlin's files on June 13, 1996 because Merlin appeared to have abandoned her law practice and failed to respond to inquiries from the director's office.[2] The director filed a petition for disciplinary action on June 21, 1996 concerning neglect of three client matters, unauthorized practice of law and noncooperation with the director's office. Because Merlin could not be found and served with the petition, we issued an order on July 1, 1996 suspending her under Rule 12(c)(1), Rules on Lawyers Professional Responsibility (RLPR).[3] The order stated that

the director's office because either the clients could not be found or the clients did not respond to the director's letter.

3. Rule 12(c), RLPR, provides in pertinent part:

   (1) *Suspension.* If the respondent [of a petition for disciplinary action] cannot be found in the state, the Director shall mail a copy of the petition to the respondent's last known address and file an affidavit of mailing with this Court. Thereafter the Director may apply to this Court for an order suspending the respondent from the practice of law.

Merlin had one year to move to vacate the suspension order and to request leave to answer the disciplinary petition.

Merlin filed an answer to the petition on July 23, 1996, denying some of the conduct and offering some mitigating circumstances. An evidentiary hearing before a referee was scheduled for February 21, 1997. The director served Merlin by mail with a supplementary petition on November 7, 1996, reciting four additional bases for discipline: neglect of two more client matters, failure to file income taxes, and continued noncooperation with the director's office. Merlin did not file an answer to the supplementary petition. Two days before the referee hearing, Merlin telephoned the director's office to say that she was medically unable to attend. The director's office told her that she needed to make a motion for a continuance with the referee, but Merlin refused to discuss the matter further and no motion was filed.

■ The hearing before the referee proceeded on February 21, 1997 based upon the initial disciplinary petition and supplementary petition. Merlin did not attend. The referee issued his findings of fact, conclusions of law, and recommendation for discipline on March 20, 1997. Merlin did not order a transcript, and thus under Rule 14(e), RLPR, the referee's findings and conclusions are conclusive. The findings summarized below include neglect of five client matters, unauthorized practice of law, failure to file tax returns, and noncooperation with the director's office.

The first complaint received by the director's office was from Okon E. Okon, who had retained Merlin in 1994 to help bring his children into the United States after the petitions he filed pro se to the Immigration and Naturalization Services (INS) had been returned. Okon telephoned Merlin sometime after June 22, 1994, to inquire about his case and learned that she had resubmitted the petitions on April 10, 1994. He asked that she mail copies of the resubmitted petitions to him, but he never received them. Okon tried unsuccessfully to telephone Merlin several times, but she did not return his calls. Eventually, in November 1994, Okon wrote Merlin a letter questioning the status of his case—she did not reply. Merlin was suspended from October 1, 1994, through December 5, 1994 but she did not notify Okon of her suspended status. In February 1995, Okon hired a new attorney. The new attorney sent Merlin a letter asking for the file, but Merlin did not reply and never forwarded the file.

Geoffrey Card retained Merlin in 1991 to handle an immigration matter for his son. In August 1995, Card discharged Merlin and retained new counsel because Merlin failed to return his letters or telephone calls concerning the status of the case. Card requested that Merlin forward his file to Melissa Arndt, his new attorney. Arndt wrote Merlin four times over the next four months requesting the file, but Merlin never replied and never sent the file. Arndt eventually filed a complaint with the director's office.

Merlin represented Richard Anyanwu in an immigration matter but formally withdrew from representation in December 1995. Merlin never contacted Anyanwu about picking up his file from her, and failed to appear at several scheduled meetings. Merlin also failed to tell Anyanwu that her license to practice law was suspended in October 1995 for failure to pay her attorney registration fee. Anyanwu eventually retained new counsel, but Merlin did not return the telephone calls and letters from the new attorney and never forwarded Anyanwu's file as requested. Anyanwu complained to the director's office about Merlin's conduct, as did the INS, because Merlin failed to disclose in her motion to withdraw as Anyanwu's counsel that she had been suspended on October 1, 1995.

Richard Olawole retained Merlin in the fall of 1995 to handle an immigration matter concerning his adult daughter in Nigeria. Olawole paid Merlin $580, including $80 for an INS filing fee. Merlin never paid the filing fee. Olawole could not contact Merlin, either by telephone or in person at her office, and filed a complaint with the director's office. Additionally, Merlin failed to advise Olawole that she had been suspended from the practice of law for failure to pay her attorney registration fee, and she failed to advise him that she was withdrawing from further representation.

Alaere Wariebi Williams and Harrison Williams retained Merlin to represent them in an immigration matter in 1995, and Merlin filed a notice of appearance with the INS as an attorney on their behalf. On March 30, 1995, the INS notified Merlin of a February 6, 1996, hearing concerning the Williamses' immigration matter. Harrison Williams tried to reach Merlin, on the telephone and in person at her office, but she never returned his messages. Merlin did not notify the Williamses of her October 1995 suspension and failed to attend the February 6, 1996 hearing.

The Minnesota Department of Revenue filed a complaint with the director's office because Merlin failed to file her individual income tax returns for 1989 through 1995, and failed to pay her personal income taxes for 1987 and 1988. Additionally, in connection with her law practice, Merlin failed to file employee withholding returns for September 1989 through December 1992, June 1993 through June 1994, and September 1994 through December 1995. She also failed to file sales tax returns for March 1994 through December 1995.

Throughout this period Merlin has continually failed to cooperate with the director's office during its investigation of these complaints. The director's office wrote Merlin a letter on February 14, 1995 concerning her unauthorized practice of law during the period of suspension. Merlin did not reply. A follow-up letter also went unanswered. Merlin answered the director's third letter concerning the matter and asserted that the payment had been made late, she had not practiced law while suspended, and she had paid her registration fees through September 30, 1995. After receiving this letter, the director's office learned that the check for Merlin's 1995–96 attorney registration fee had not been honored by the bank. Merlin did not reply to any of the three following letters from the director's office regarding the 1995–96 fee.

On January 8, 1996, the director's office sent Merlin a notice of investigation of the Card complaint, requiring Merlin to respond in writing within 14 days. Merlin failed to reply to this notice or to two follow-up let-ters. On February 21, 1996, the director's office sent Merlin another notice of investigation, this one regarding the Anyanwu complaint. Merlin did not reply. On April 1, the director's office mailed Merlin a notice of investigation concerning the Olawole complaint, and, on April 10, mailed a notice of investigation concerning the INS complaint. Merlin replied to none of these notices. On July 26, the director's office mailed Merlin notice of the investigation of the Department of Revenue complaint. Again, Merlin did not reply.

Merlin filed an answer to the director's petition for disciplinary action on July 23, 1996. Merlin argued that her conduct was the result of serious physical problems including "Post–Traumatic Stress Disorder, diabetes, obstructive sleep apnea, and abnormal endemetrial (sic) hyperplasia which at times became life-threatening." Merlin offered to provide further details of her medical problems, but only if she was guaranteed that the information would remain sealed and confidential. The director's office replied that confidentiality would not be possible and sent Merlin medical authorization forms to gain access to her medical records. Merlin never returned the authorization forms and provided no more information regarding her medical problems.

Following the hearing on these matters, the referee concluded that: (1) Merlin's conduct in her representation of clients violated Minn. R. Prof. Conduct 1.3, 1.4, and 1.16(d); (2) her failure to provide notice of her fee-suspended status violated rule 26, RLPR; (3) her unauthorized practice of law during suspension violated Minn. R. Prof. Conduct 5.5(a); (4) her failure to file tax returns and failure to pay tax liabilities violated Minn. R. Prof. Conduct 8.4(b) and 8.4(d); (5) her failure to cooperate with the director's office violated Minn. R. Prof. Conduct 8.1(a)(3) and 8.4(d) and Rule 25, RLPR; and (6) she failed to prove by clear and convincing evidence that she suffers from a serious physical or psychological condition, or that such a condition is the cause of her misconduct. The referee recommended that Merlin be suspended indefinitely from the practice of law.

■ Since the referee's findings and conclusion are deemed conclusive, the only issue before this court is the appropriate discipline. The purpose of attorney discipline is not to punish the attorney but rather "to guard the administration of justice and to protect the courts, the legal profession and the public." *In re Serstock*, 316 N.W.2d 559, 561 (Minn.1982) (quoting *In re Hanson*, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960)). Great weight is accorded to the referee's recommendation as to discipline, but this court alone has the final responsibility to determine the appropriate sanction. *In re Perry*, 494 N.W.2d 290, 293 (Minn.1992). In making that determination, we consider the nature of the misconduct, the cumulative weight of the violations, the harm to the public, and the harm to the legal profession. *In re Selmer*, 529 N.W.2d 684, 687 (Minn. 1995).

■ Although each case is decided on its own facts, prior cases may be helpful by analogy when considering what sanction to impose. *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988). Indefinite suspension is typical in cases involving continued or repeated neglect of client matters without evidence of mitigating circumstances. *In re Levenstein*, 438 N.W.2d 665 (Minn.1989). In *Levenstein*, this court ordered indefinite suspension for lack of diligence and communication, failure to return client files, unauthorized practice of law while suspended for failure to pay attorney registration fees, and noncooperation during the disciplinary investigation. *Id.* at 668. *See also In re Jensen*, 418 N.W.2d 721 (Minn.1988) (indefinite suspension for neglect of two client matters, practicing law while suspended for failure to pay attorney registration fee, and noncooperation during the disciplinary investigation); *In re Madsen*, 426 N.W.2d 434 (Minn.1988) (indefinite suspension for neglect of client matters, failure to return client phone calls, and noncooperation during the disciplinary investigation); *In re Rockne*, 375 N.W.2d 28 (Minn.1985) (indefinite suspension for failure to pursue a client's claim or return the client's calls and noncooperation during the disciplinary investigation). Merlin's misconduct involving neglect of client matters, unauthorized practice of law while suspended, and noncooperation during the disciplinary investigation is closely comparable to the cases cited above where indefinite suspension was deemed appropriate. In each case we carefully reviewed the misconduct and considered what sanction was necessary to meet the objectives of guarding the administration of justice, and protecting the courts, the legal profession and the public. We do so here, and similarly conclude that indefinite suspension is an appropriate sanction.

■ While we consider mitigating factors when determining the appropriate sanction for misconduct, an attorney offering a physical or psychological disability as a mitigating factor has the burden of presenting clear and convincing evidence of the disability. *In re Cowan*, 540 N.W.2d 825, 827 (Minn.1995). In addition, the attorney must show that the disability caused the misconduct, that she is being treated for the disability and making progress in recovery, that the recovery has stopped the misconduct, and that the misconduct is not likely to recur. *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn. 1983). Although Merlin offered medical problems as mitigating circumstances for her conduct in her answer, she refused to provide more information or authorization for her medical records, nor did she provide any evidence at all, to say nothing of clear and convincing evidence, that she suffers from a serious physical or psychological condition, that such a condition is the cause of her misconduct, or the other elements of proof necessary to support a mitigation claim. The referee's findings with regard to her medical condition as a mitigating factor were not clearly erroneous. *Selmer*, 529 N.W.2d at 686.

Accordingly, we order that Merlin be indefinitely suspended from the practice of law, effective immediately, with reinstatement conditioned upon proof of her fitness to practice law under Rule 18, RLPR.

KEITH, C.J., took no part in the consideration or decision of this case.